[Crim. No. 3318. In Bank.—June 11, 1930.]

THE PEOPLE, Respondent, v. J. W. MARSHALL, Appellant.

Edward J. Kelly for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

THE COURT.—A hearing in this court after judgment in the District Court of Appeal, Fourth District, was granted in order that we might consider the effect of that judgment in the light of our recent decisions construing section 1026 of the Penal Code as amended in 1927 and the effect of the former appeal in this same case (*People* v. *Marshall*, 99 Cal. App. 224 [278 Pac. 258]) upon the rights of the defendant on this, the subsequent appeal. It cannot be doubted that the original judgment of conviction pronounced against the defendant on January 26, 1929, was premature and erroneous. This error was corrected by the reversal. Upon the going down of the *remittitur*, the cause was then pending before the trial court in the state that it would have been, had the original judgment not been rendered. No good cause has been shown for a re-examination of the points urged and passed upon on the former appeal or for a retrial of the case on the separable plea of ''not guilty.'' There but remained the determination of the issue raised by the plea of ''not guilty by reason of insanity,'' as properly directed by the reviewing court on the former appeal. This court refused to exercise the power to make a similar order on petition for rehearing in *People* v. *Pokrajac*, 206 Cal. 259 [274 Pac. 63], concluding, as we did, that under the circumstances appearing in that case a retrial as to both issues should be had. After an examination of the record herein we are satisfied with the reasoning and conclusions of the District Court of Appeal and hereby adopt the opinion of the court of the Fourth District written by Mr. Justice Barnard as the opinion of this court. The opinion passes upon, and we think correctly, all of the points raised on the present appeal and is as follows:

"This is an appeal from a judgment and sentence upon conviction of the crime of grand theft, and from an order denying a motion for a new trial.

"The defendant entered a plea of not guilty and also one of not guilty by reason of insanity. The case went to trial on the plea of not guilty only, on January 11, 1929. After a verdict of guilty, the defendant was sentenced to the state prison at Folsom. Upon appeal, the judgment was reversed and the case remanded for trial upon the issue of insanity. (*People* v. *Marshall*, 99 Cal. App. 224 [278 Pac. 258].) The *remittitur* was filed in the Superior Court on July 1, 1929. On August 1, 1929, the case went to trial on the issue raised by the plea of not guilty by reason of insanity. The jury having found that the defendant was sane at the time of the commission of the act charged in the information, judgment and sentence were pronounced, and the defendant appealed.

"The appellant first urges that we again review the assignments of error which were presented and argued on the former appeal. The claim is made that it was not necessary for the court to express an opinion on these points, other than the one upon which the reversal depended, and that all references to such other points in the opinion handed down are *dicta* only. The former appeal was based both upon errors of law alleged to have occurred at the trial on the plea of 'not guilty,' and on the contention that defendant had not been duly convicted, in that the trial court had no authority to pronounce sentence upon the defendant, without first having a jury pass upon the issue raised by his separate plea. Both of these contentions were urged by appellant and both were passed upon by the appellate court. Without question, if errors of law had been found, the order of reversal would have directed a retrial on the plea of not guilty, as well as a trial upon the issue of insanity. The references in the opinion of the court to these matters, other than the failure of the trial court to submit the issue of the sanity of the defendant to a jury, were not *dicta* as claimed, but were necessary to the decision of questions properly before the court. It was held that there was no error prior to the time of judgment and sentence, but that the pronouncement of sentence was premature, the verdict not being complete until it should be determined

whether or not the defendant was sane at the time the offense was committed.

"In the case of *People* v. *Hamilton,* 103 Cal., at 496 [37 Pac. 627, 630], the court said:

" 'It is not doubted but that a ruling by the appellate court upon a point distinctly made upon a previous appeal is in all subsequent proceedings in the same case a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves.' (Citing cases.)

"No further evidence was put in after the *remittitur* came down on any of the matters involved in the first hearing, and as to those matters the decision heretofore rendered by the District Court of Appeal, having become final, is the law of the case. (*Mitchell* v. *Davis,* 23 Cal. 381; *People* v. *Walker,* 76 Cal. App. 192 [244 Pac. 94].)

"The next point raised is that the defendant was deprived of his right to a speedy trial. It is insisted that having been convicted on his plea of not guilty on January 14, 1929, he was entitled to an immediate trial on his plea of not guilty by reason of insanity. Section 1026 of the Penal Code reads in part as follows:

" 'If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury, in the discretion of the Court.'

"No mention of the plea of 'not guilty by reason of insanity' was made at the time judgment was pronounced. When the defendant was asked if he had any cause to show why judgment should not be pronounced, he said that he had, but the record shows no objection made, other than his motion for a new trial. In due course, he himself instituted an appeal. The *remittitur* was filed July 1, 1929, thus restoring jurisdiction to the superior court. The trial on the issue of not guilty by reason of insanity began on August 1, 1929. It is urged that by authority of sections 681a, 686, 1050 and 1382 of the Penal Code, the defendant was entitled to a dismissal of the case. The record shows, without contradiction, that when the defendant was arraigned he waived his right to trial within the statutory

period provided by law. We are of the opinion that the entire proceeding provided for under section 1026 constitutes but one trial, and therefore this waiver applied to each of the respective hearings upon the separate pleas. ■ Not only is this true, but, by the appeal following the first hearing, the superior court was divested of jurisdiction to proceed in the matter until that appeal was decided, and thereupon, another period of sixty days was started in operation by the order of the appellate court. (*In re Scott*, 81 Cal. App. 577 [254 Pac. 596].) One reason why the provisions of section 1382 of the Penal Code do not apply is because the case was actually tried on the insanity issue within sixty days from the filing of the *remittitur*. ■ Section 1050 of the Penal Code is directory only and contains no provision for the dismissal of a case when its terms are not complied with. (*Ray* v. *Superior Court*, 208 Cal. 357 [281 Pac. 391].) Section 1382 of the Penal Code has no application to a new trial following the filing of a *remittitur*. (*In re Alpine*, 203 Cal. 731 [58 A. L. R. 1500, 265 Pac. 947].) We think the same thing is true of a hearing following the filing of a *remittitur*, in a case where the second hearing provided for in section 1026 of the Penal Code has been delayed, pending the determination of an appeal from the first hearing thereunder. ■ The appellate court remanded this case to the trial court for the sole purpose of a trial upon the one remaining plea. Neither by the delay pending the appeal nor by the failure to bring him to a trial on this plea within thirty days after the filing of the *remittitur* was the defendant deprived of his constitutional or statutory rights. (*People* v. *Walker, supra.*)

■ "It is next argued that the judge who presided at the hearing on the issue of insanity had no jurisdiction to act in the matter, because his assignment to the superior court had expired. The first hearing had been held before Eugene Daney, Jr., a duly elected, qualified and acting justice of the peace, then sitting as a judge of the superior court of the county of San Diego under an assignment thereto by the Judicial Council of the State of California. His assignment was in the usual form, the pertinent part thereof reading as follows:

" ' . . . Good cause appearing therefor, you are hereby assigned to sit as Judge of the Superior Court in and for

the County of San Diego, beginning January 2 to and including January 31, 1929, and thereafter to act as such until all matters heard or partially heard or submitted to you therein shall have been completed and disposed of by you, and also for the purpose of hearing and determining any motion after judgment in a case decided by you. . . . '

"After the *remittitur* was filed, Judge Daney was called in by the presiding judge of said superior court to complete the hearing of this case. The hearing on the issue of insanity began on August 1, 1929, and no other assignment from the Judicial Council appears in the record. A trial on the issues presented by a plea of 'not guilty' and a plea of 'not guilty by reason of insanity,' under the provisions of section 1026 of the Penal Code, constitutes but one trial. (*People* v. *Marshall, supra; People* v. *Leong Fook,* 206 Cal. 64 [273 Pac. 779].) Having partially heard the matter in question, under the authority specifically given in the assignment as above set forth, the judge presiding had jurisdiction to complete the trial.

■ "The next point urged is that the appellate court had no power to reverse this case without either ordering a retrial of all the issues or a dismissal of the case, and that there should have been a trial *de novo*. The order made on the previous appeal is as follows: 'The judgment is reversed and the case remanded for trial upon the issue presented by the special plea.' Appellant argues that since no pleas are denominated special pleas by statute, all being equally general and equally special, the appellate court intended to order a trial *de novo* on all pleas. We think it is clear that the order of that court was to have the case completed on the one issue only (the question of insanity), and not to have all of the issues retried. ■ It is further argued that if a new trial from the beginning was not ordered, the defendant must be discharged. Section 1260 of the Penal Code provides:

" 'The court may reverse, affirm, or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial.'

"Under the power here given to modify a judgment or order, the court may reverse in part and affirm in part,

and may send the case back for a new trial on certain counts and not on other counts. (*People* v. *Dillon,* 68 Cal. App. 457 [229 Pac. 974].) It has been held that the court may set aside a judgment and sentence where erroneously pronounced without upsetting the verdict. (*People* v. *Hill,* 36 Cal. App. 574 [172 Pac. 1114]; *People* v. *Votaw,* 38 Cal. App. 714 [177 Pac. 485]; *In re Lee,* 177 Cal. 690 [171 Pac. 958].) The court here did not disturb the verdict in the first of two necessary steps which constitutes but one trial. On the contrary, the court held there were no errors of law in the proceedings up to and including that verdict. It was held that since the verdict was not yet complete the trial court had no power to pronounce judgment and sentence and the case was sent back to be completed. It was then the duty of the trial court to proceed, as should have been done in the first instance, to a hearing on the remaining issue. The appellate court had the power to remand the case to the trial court for proper action. (*In re Lee, supra.*) The judgment was not 'reversed without ordering a new trial' within the meaning of section 1262 of the Penal Code.

 "The next two points raised relate to the sustaining by the trial court of objections to certain questions asked on cross-examination of two witnesses, who had testified that the defendant had appeared to them to be sane. Neither of these were expert witnesses, but both had testified as intimate acquaintances of the defendant. Each witness had given his opinion on the subject, and the reasons upon which his opinion was based. (Sec. 1870, Code Civ. Proc., subd. 10.) The questions to which objections were sustained were as to whether the witnesses knew how an insane person would act; what insanity is; the difference between idiocy and insanity; the different manifestations of insanity, and whether or not the witness knew the various types of insanity. All of these were questions which would have been more properly addressed to an expert witness, than to one testifying only from the standpoint of an acquaintance. In any event the witnesses not only stated the reason for their opinions, but the record shows a full and complete cross-examination allowed as to the facts on which they based their opinions, and as to their previous experience with insane people, including any reading on the subject. We have read the entire transcript of the testimony of these two

witnesses and the same shows that the exclusion of the evidence sought to be brought out by these questions was without prejudice to the rights of the defendant. (Const., art. VI, sec. 4½.)

"It is next insisted that the court erred in excluding evidence of the insanity of the defendant's sister. It must be conceded that the defendant had the right to prove such insanity by competent evidence (*People* v. *Harris*, 169 Cal. 53 [145 Pac. 520, 523]). The wife of defendant was asked whether there was insanity in defendant's family. The court sustained an objection to this question on the ground that it was not the best evidence. The defendant then attempted to prove such insanity of the sister by introducing letters said to have been written to the wife of defendant by the sister, and which letters are claimed to show unmistakable signs of insanity. The court sustained objections to the introduction of these letters, on the ground that they were incompetent, irrelevant and immaterial, hearsay, no proof of their genuineness, and no opportunity to cross-examine the writer as to whether they were written voluntarily or under instructions. Other than these letters, no evidence of the insanity of the sister was offered. The objection to the first question on the ground that it was not the best evidence was not good. However, before a witness may be interrogated as to the mental condition of other members of the family, he must first be qualified to testify in that regard. In *People* v. *Harris, supra,* the court said:

" ' . . . Undoubtedly, where insanity is a defense the mental condition of any of the relatives of the defendant is material and on that subject as on all inquiries relating to insanity a reasonable latitude should be allowed. But this does not mean that the rules as to the admissibility of evidence should be relaxed. The rule is that before the opinion of witnesses as to sanity of a person or a particular phase of it can be given—and the inquiries here were simply calling for the opinion of the witnesses on that subject—it must be preliminarily shown that the witness is qualified to express it and clearly this was not shown here . . . ''

"No foundation was here laid as to the qualification of the witness to express an opinion on the subject. The witness

admitted she had never met the sister, and had never seen her write. She testified that she believed the letters were written and signed by the sister, as she had received a number of letters from her. Apparently all of these letters were written after the commission of the offense charged in the information. Aside from the objectionable features of such evidence standing alone, without further proof tending to show the insanity of the writer, and with nothing to show whether the letters showed the real state of mind of their author, or were purposely written to create an impression in that regard, the qualification of this particular witness to testify as to the genuineness of the letters . was very weak to say the least. Under the circumstances, the ruling of the court on the admission of the letters was correct. In addition to this, it is incumbent upon the appellant to show upon appeal that any error, if such there was, was prejudicial to him. Article VI, section 4½, of the Constitution provides that no judgment shall be set aside on the ground of improper rejection of evidence, unless after the examination of the evidence the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. Our attention has not been called in any of the briefs to the letters claimed to have been written by the sister and offered in evidence, and after searching through the more than six hundred pages of the transcript we are unable to find them. We do not know whether there was anything in them tending to bear out appellant's contention or not.

"Complaint is also made of the refusal of the court to give a number of specific instructions asked for by defendant. While we do not consider it necessary to set these forth in detail, we have examined them all. Nearly all of them were instructions that the jury should take into consideration particular facts. The record shows that the court did instruct the jury that every fact showing the mental condition of the defendant at the time and all things bearing on the subject of his capacity to distinguish right from wrong, at that time, must be considered by them. The instructions given were full and complete and in our opinion nothing would have been added to them by the inclusion of those asked for, and refused."

PRESTON, J., Dissenting.—I dissent.

It appears that the judgment on the first trial of this cause (99 Cal. App. 224 [278 Pac. 258]) was reversed because of the failure of the trial court to finish the trial by disposing of the question raised by defendant's plea of not guilty by reason of insanity. While it must be admitted that in the order of reversal the District Court of Appeal attempted to preserve the verdict of guilty theretofore rendered on the issue of defendant's first plea, yet in my opinion said court could not properly enter any order except a general order of reversal. This follows from the fact that the disposition of the issues made by the several pleas of the defendant constituted but a single indivisible trial.

This is in effect held over and over again in the case of *People* v. *Leong Fook*, 206 Cal. 64 [273 Pac. 779]. There the court held that it was not necessary that the jury be resworn after the trial of one issue and before entering upon the trial of another; also that after the trial of one issue no examination of jurors should be had as to their qualifications to further act as such before entering upon the trial of the further issue. Moreover the court there approved the following quotation from the case of *People* v. *Connor*, 142 N. Y. 130 [36 N. E. 807, 808]: "There was but one indictment and one charge, and the defendant's pleas constituted his answer and defense to the accusation. He was entitled to but one trial and could demand but one jury. The order in which the issues should be disposed of was a matter in the discretion of the court, which had power to direct them to be tried separately or together; and whatever course was adopted the trial must be one continuous proceeding, and the rights of the defendant with respect to the examination of the jury were the same as if the plea of 'not guilty' alone appeared upon the record. He had no more right to stop the trial while in progress in order to ascertain the effect which the evidence given had upon the minds of the jury than he would have had if there was only a plea of the general issue."

In fact the undeniable conclusion from the reasoning employed in the Fook case excludes the existence of two or more juries acting in department upon the trial of the pleas

entered in a criminal case. This simply cannot be done in a jury case where the jury is impaneled according to the rules of common law. Moreover, the identical question here before us was passed upon by this court in the case of *People* v. *Pokrajac*, 206 Cal. 259 [274 Pac. 63]. There the defendant, as here, entered the two pleas. At the conclusion of the trial on the first plea the court immediately fixed the time for pronouncing judgment and then turned to the jury and said: "And you, gentlemen of the jury, I wish, on behalf of the People of the State of California, to commend you for your courageous and faithful work in this case in rendering a verdict which, undoubtedly, is the correct one." It will be noted that this remark of the court in nowise affected or tainted the verdict on the plea of "not guilty," but this court held that it did prejudice the whole issue and gave and made its general order of reversal. Thereafter the attorney-general petitioned this court to have the judgment modified to read as follows: "The judgment and the order denying defendant's motion for a new trial upon his plea of not guilty by reason of insanity are hereby reversed and a new trial upon such plea is hereby ordered." Upon reconsideration this court refused to change its former order and entered an order as follows: "By the Court: The petition for a rehearing and a modification of the decision herein is denied. (All concur.) Waste, Chief Justice."

The above ruling and the ruling contained in the majority opinion are diametrically opposed to each other. I think the judgment should be reversed and a new trial had upon all issues.